**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

DENISE DARKS,
on behalf of minor child, T.D.,

      Plaintiff,

  v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Case No. 1:14-cv-921

Barrett, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Denise Darks filed this Social Security appeal in order to challenge the Defendant's finding that her minor child (hereinafter "TD") is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents two claims of error for this Court's review.  The Commissioner filed a response, to which Plaintiff filed no reply.  As explained below, the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Background**

In April 2011, Plaintiff filed an application for Supplemental Security Income (SSI) on TD's behalf, alleging a disability due to attention deficit hyperactivity disorder ("ADHD") and behavior problems since December 1, 2010. After the application was denied initially and upon reconsideration, Plaintiff requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  An evidentiary hearing was held on April 16, 2013, wherein Plaintiff and TD appeared and testified.  (Tr. 36-66).  On May 6, 2013, ALJ Kristen King denied Plaintiff's SSI application in a written decision.  (Tr. 14-31).

The ALJ agreed that TD has severe impairment of attention deficit-hyperactivity disorder ("ADHD") and speech and language delays.  (Tr. 17).  Considering those

impairments, the ALJ found that TD functionally experiences a "marked" limitation in only one relevant area or "domain" of his life – attending and completing tasks. The ALJ determined that although TD has other limitations, those limitations are "less than marked." (Tr. 24-30). Because TD has only one area of "marked" limitation, the ALJ determined that TD was not under disability, as defined in the Social Security Regulations, and was not entitled to SSI. (Tr. 30).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination.

On appeal to this Court, Plaintiff first argues that the ALJ erred by failing to find that TD had at least "marked," if not "extreme" limitations in a second domain – that of acquiring and using information. Had the ALJ determined that TD suffers from either a "marked" or "extreme" limitation in the second domain of acquiring and using information, TD would have been entitled to a presumption of disability. Plaintiff further argues that the ALJ's decision is not supported by substantial evidence because it is internally inconsistent. Upon careful review, the undersigned finds that Plaintiff's asserted assignments of error are not well-taken.

**II. Analysis**

**A. Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). An individual under the age of eighteen will be considered to be under a disability if the child has a medically determinable impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to last, for a continuous period of not less than 12 months. *See* 42 U.S.C.

§1382c(a)(3)(C)(i). The implementing regulations define the standard of "marked and severe functional limitations" in terms of "listing-level severity." *See* 20 C.F.R. §§416.902, 416.906, 416.924a, 416.926.

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income by a person under the age of 18, the Social Security Agency is guided by a three-step sequential benefits analysis. In this case, the first two steps of that analysis are uncontested. At Step 1, the Commissioner asks if the claimant is performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe." TD has not engaged in substantial gainful activity, and has severe impairments of ADHD and speech and language delays. (Tr. 17).

3

At Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments. *See* 20 C.F.R. §416.924a. The ALJ concluded that none of TD's impairments, alone or in combination, met or medically equaled a Listed Impairment that would entitle TD to a presumption of disability. The ALJ specifically considered Listing 112.11 for ADHD. (Tr. 17). The focus of Plaintiff's appeal to this Court is whether TD's mental impairments "functionally equal" a Listed impairment.

To determine functional equivalence, the Commissioner is required to assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. §416.926a(b)(1). To prove functional equivalence to a Listing, Plaintiff must show that TD's impairments resulted in "marked" limitations in at least two of the six domains, or that his impairments were "extreme" in at least one of the domains. 20 C.F.R. §416.926a(d). As stated, the ALJ determined that Plaintiff's limitations were "marked" in just one area – the domain of attending and completing tasks. Both at the administrative level and before this Court, "Plaintiff has the ultimate burden of establishing the existence of a disability." *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1233 (6th Cir. 1993).

**B. The ALJ's decision is Supported by Substantial Evidence**

As detailed above, Plaintiff disputes the ALJ's finding of "less than marked" limitations in the domain of acquiring and using information. Plaintiff first contends that substantial evidence does not support the ALJ's finding that TD's limitations were "less than marked" in the referenced domain, and that the evidence instead proves that his

4

limitations were at least "marked" if not "extreme." Second, Plaintiff contends that the ALJ's decision is internally inconsistent and therefore precludes meaningful review.

*1. "Acquiring and Using Information*

"Marked limitation" exists when the child's impairment "interferes seriously" with the ability to independently initiate, sustain, or complete activities, regardless of whether the impairment limits only one activity in the domain, or several activities. The interactive and cumulative effects of a child's impairments must be considered; both relevant regulations and several social security rulings also require the Commissioner to consider the "whole child" in making findings regarding functional equivalence. 20 C.F.R. §415.926a(b) and (c); *see also generally* SSR 09-1p. Relevant to Plaintiff's challenge in this case, a "marked" limitation is defined as a limitation that is "more than moderate" but "less than extreme." 20 C.F.R. §416.926a(e)(2).

The domain of acquiring and using information concerns a child's ability to acquire or learn information, and to use the information he has learned. In reviewing the referenced domain, the ALJ discussed all relevant standards to evaluate "how well a child is able to acquire or learn information, and how well a child uses the information he has learned." (Tr. 24-25). As the ALJ noted, the domain involves how well children perceive, think about, remember, and use information in all settings, including their daily activities at home, at school, and in the community. *See* 20 C.F.R. §416. 926a(g) and SSR 09-3p). The ALJ appropriately reviewed what an adolescent child should be able to demonstrate in the domain of acquiring and using information, since TD was an adolescent child both at the time when the application was filed on his behalf and at the date of the evidentiary hearing. The ALJ also reviewed Social Security regulation 20 C.F.R. §416.926a(g)(3) and SSR 09-3p, which provide examples of the types of limited

5

functioning in the referenced domain that a child may have over a range of ages and developmental periods. (Tr. 25).

In terms of evaluating whether a child has "marked" impairment, the regulations provide that a child without any impairment should be able to "demonstrate what he has learned in academic assignments (e.g., composition, classroom discussion, and laboratory experiments)" and should "be able to use what he has learned in daily living situations without assistance (e.g., going to the store, using the library, and using public transportation)." *See* 20 C.F.R. §416.925a(g)). An "adolescent" child with no impairment should be able to comprehend and express both simple and complex ideas, using increasingly complex language (vocabulary and grammar) in learning and daily living situations (e.g., to obtain and convey information and ideas)," and should "learn to apply these skills in practical ways that will help him enter the workplace after finishing school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer)." *Id.*

In contrast to those with no limitations, children with limitations do not understand "words about space, size, or time (e.g., in/under, big/little, morning/night); (ii) cannot rhyme words or the sounds in words; (iii) [have] difficulty recalling important things learned in school yesterday; (iv) [do] not use language appropriate for age; (v) [are] not developing 'readiness skills' the same as peers (e.g. learning to count, reciting ABC's, scribbling); (vi) [have] difficulty comprehending written or oral directions; (vii) [struggle] with following simple instructions; (viii) [have] difficulty solving mathematics questions" or "(ix) [talk] only in short, simple sentences, and [have] difficulty explaining what [they] mean[]." 20 C.F.R. §416.925a(g)(2)(iv) and SSR 09-3p. However, the regulations

6

"recognize that limitations of any of the activities in the examples do not necessarily mean that a child has a 'marked' or 'extreme' limitation." 20 C.F.R. § 416.926a.

In finding that TD has some limitation in acquiring and using information but evaluating the degree of that limitation as "moderate" and therefore "less than marked," the ALJ provided the following analysis:

> Claimant has less than marked limitation in acquiring and using information.  The claimant's educational records indicate ongoing problems relative to his progress when compared to his classmates. However….a comprehensive review of the evidence finds the primary source of his difficulties to be inattention and an inability to focus as opposed to any distinct cognitive shortcoming that does not allow him to acquire and use information. To this end, IQ testing finds his full-scale intelligence at low average levels, and recent school documents suggest his "good progress" in following directions and attaining the goals of his IEP.  Importantly, his most recent grades are all passing, ranging from "Ds" all the way to "Bs." Teachers have found extended school year services unnecessary, and continue to pass him through the grade levels.
>
> Moreover, the claimant exhibits a mastery of age appropriate tasks, demonstrating his ability to learn and apply his knowledge.  He follows rules, enjoys video games, and rides a bicycle.  He engages in chores such as making his bed, taking out the trash, and cleaning countertops, suggestion a ready ability to acquire and use information in an age-appropriate manner. While his academic progress is limited by symptoms of his diagnosed ADHD, and while he exhibits some continued delays in speech and vocabulary, the evidence firmly indicates that his overall functional impairment in this area is of a less than marked nature.

(Tr. 25) (internal citations omitted).

Plaintiff argues that none of the reasons cited by the ALJ are valid, and therefore do not constitute substantial evidence.  Plaintiff generally complains that the ALJ failed to comply with the "whole child" approach that is mandated by SSR 09-1p.  I disagree, and conclude that the ALJ's analysis is supported by substantial evidence.

Plaintiff first asserts that the ALJ improperly determined that that TD' s limitations could not be markedly limited in acquiring and using information because his primary issues related to his inattention and an inability to focus as opposed to any distinct

7

cognitive shortcoming that does not allow him to acquire and use information. (Tr. 25). Plaintiff contends that this determination fails to fit the "whole child" analysis found in SSR 09-1, Plaintiff argues that it does not matter why the child is doing poorly academically; what matters is how he compares to his peers and how much accommodation is necessary to allow the child to perform at that level. As such, Plaintiff contends that ALJ King focused too much on how much progress TS had made over the course of the school year, without giving much consideration to how TD compared to his same-aged peers. Plaintiff's contention is unavailing.

As noted by the Commissioner, the ALJ stated that she evaluated TD using the "whole child" approach when she made her findings regarding functional equivalence. (Tr. 18). The ALJ expressly noted that TD's academic advancement was at a level below that of his peers, yet she also observed that he attended regular classes for all academic areas and that professionals have found extended school year services unnecessary. (Tr. 20, 283). Moreover, the ALJ referred to scores on the Ohio Achievement Assessment that revealed that TD was not far behind his peers. (Tr. 21, 273). Notably, Plaintiff's March 2013 IEP report identified Ohio Achievement Assessment scores from the Spring of TD's third grade year as Reading 385, and Math 353, while noting that a score of 400 in each area would be considered proficient. (Tr. 273).

Moreover, the ALJ's decision with respect to this domain, also considered the findings of the medical and opinion evidence of records. Notably, the ALJ gave significant weight to the findings of the state agency consulting physicians Drs. Rachel Rosenfeld and Anton Freiholfer, psychologists Drs. Bruce Goldsmith and Todd Finnerty, and speech language pathologists Lisa Lynch and Melissa Hall. Upon review of the

evidence of record, these professionals concluded that Plaintiff exhibited less than marked language and cognitive based deficiencies, and less than marked problems in interacting and relating to others. (Tr. 22). The ALJ found that such findings comport with Plaintiff's measured full-scale and area specific IQ scores as well as the improvement in his grades.

Additionally, the ALJ considered the assessments of Plaintiff's teachers Caryl Schaefer and Amanda Hook, both of whom found that Plaintiff has "very serious" problems spanning almost all functional domains addressing Plaintiff's abilities to acquire and use information. The ALJ, however, gave these assessments little weight because they were inconsistent with the grades assigned by each teacher. Namely, TD received a C and C- in Schaefer's classes and a B- in Ms. Hooks writing class. (Tr. 24). Thus, despite Plaintiff's assertions to the contrary, the ALJ clearly considered Plaintiff's academic progress compared to that of his peers.

As noted above, the domain of acquiring and using information is not limited to "academic" information but includes "how well children perceive, think about, remember, and use information in all settings, including their daily activities at home, at school, and in the community." In this regard the ALJ also considered TD's daily activities at home, including playing video games, doing household chores, and age appropriate self-care tasks. The "whole child" review not only permits but requires the ALJ to consider all relevant information under all relevant domains. SSR 09-1p.

In sum, many children with "less than marked" limitations may perform poorly in school and/or require significant additional resources for a variety of reasons that do not equate to a "disability." Plaintiff demonstrates no reversible error. For the reasons

9

discussed, substantial evidence exists to support the ALJ's determination that TD's impairment was "less than marked" in acquiring and using information.

In addition, the professional opinions of expert consultants and other record evidence constitutes substantial evidence to support the non-disability finding. It bears repeating that:

> The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d at 1035. That the evidence could be interpreted to support *either* a "marked" or a "less than marked" finding in a particular domain does not mean that it must be interpreted in Plaintiff's favor. The Commissioner's decision must be affirmed so long as "such relevant evidence [exists] as a reasonable mind might accept as adequate to support" it. *Cutlip,* 25 F.3d at 286.

2. *Consistency of Decision*

Plaintiff's next assignment of error asserts that ALJ King's decision is internally inconsistent. Specifically, Plaintiff contends that ALJ King's finding that Listing 112.11 (for ADHD) was not met because TD did not have a marked level of hyperactivity and impulsivity is inconsistent because TD did have a marked level of inattention and distractibility. (Tr. 17). Plaintiff maintains that this finding is inconsistent with the ALJ's later finding that TD had a "marked" limitation in the domain of "attending and completing tasks." As such, Plaintiff asserts that the ALJ erred by separating the various factors of TD's ADHD (his impulsiveness and hyperactivity on one side, and his inattention and distractibility on the other side). Plaintiff's contention lacks merit.

As detailed by the Commissioner, the ALJ found that despite evidence that suggested that TD continued to experience high levels of inattention and distractibility,

10

the medical records confirmed that TD's impulsiveness and hyperactivity have exhibited sustained improvement since he started taking the medication Focalin shortly after his alleged onset date. (Tr. 17). Reports from Cincinnati Children's Hospital Medical Center (CCHMC) consistently referred to statements from TS's family members who reported significant improvement thanks to TD starting the medication. (Tr. 454- 6/20/11, 420 – 9/29/12 and Tr. 383- 2/15/13). The report from February 15, 2013, described TD as a 10 year old with ADHD combined type, whose symptoms overall, showed much improvement. (Tr. 383).

The ALJ also noted that the record contained no evidence that suggested TD displayed "marked" deficits in communicative function, social functioning, and personal functioning. (Tr. 17-18). To the contrary, the most recent IEP described TD as quiet and helpful (Tr. 272), while TD's initial IEP stated that he did not exhibit behaviors that impeded his learning or the learning of others. (Tr. 360). Thus, the ALJ relied on a number of appropriate factors when she determined that TD did not have an impairment or combination of impairments that met or medically equaled the severity of Listing 112.11. (Tr. 17-18). In light of the foregoing, the undersigned finds that the ALJ's findings are not internally inconstant and do not preclude meaningful review of her decision. Accordingly, Plaintiff's arguments are not well-taken in this regard.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

　　　　　　　　　　　　　　　　　　　　 */s Stephanie K. Bowman*
　　　　　　　　　　　　　　　　　　　　Stephanie K. Bowman
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DENISE DARKS,
on behalf of minor child, T.S.,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:14-cv-921

Barrett, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit righTD on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).